# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdulkarim Mohamed Dahir, | Case No. 18-cv-2980 (JRT/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Keith Ellison, Adam Kujawa, Scott E. Haldeman, Kirsi Poupore, Adam Kohnstamm, Alexandria Kieley, and Christopher J. Florey *in their individual and official capacities*, and Lori Swanson *in her individual capacity*,[1] | |
| Defendants. | |

STEVEN E. RAU, United States Magistrate Judge

This matter is before the Court on Defendants' motion to dismiss, (ECF No. 18), and Plaintiff Dahir's motion objecting in part and conceding in part to the letter signed by

---

[1] Dahir brings suit against various employees of the Minnesota Attorney General's Office, including the Minnesota Attorney General at the time of filing, Lori Swanson. Since Dahir's suit commenced, Swanson has been replaced as Minnesota Attorney General by Keith Ellison. Defendants notified the Court that, pursuant to Federal Rule of Civil Procedure 25(d), Ellison should be automatically substituted for Swanson as to Dahir's claims against Swanson in her official capacity. (ECF No. 12). Dahir agrees that his claims against Swanson in her official capacity persist against Ellison, but notes that his claims against Swanson in her personal capacity must survive. (ECF Nos. 16, 26). Dahir even filed a motion "objecting in part and conceding in part" to Defendants' letter. (ECF No. 26).
 There is no dispute that, pursuant to Rule 25(d), Ellison now stands for Swanson with respect to Dahir's official capacity claims. And despite Dahir's motion "objecting" to Defendants' letter, there is no dispute that Dahir's claims against Swanson in her personal capacity remain. (ECF No. 12) ("The Attorney General's Office hereby notifies the Court that Keith Ellison, Attorney General for the State of Minnesota, is substituted for Lori Swanson for all claims currently lodged against Ms. Swanson in her *official* capacity." (emphasis added)). Because there is no functional dispute between the parties, Dahir's Motion Objecting in Part and Conceding in Part to the Letter Signed by Kathryn Iverson Landrum, Esq. on behalf of Defendant Lori Swanson, (ECF No. 26), is **MOOT**. Pursuant to the automatic operation of Rule 25(d), Ellison is substituted for Swanson insofar as Dahir brought claims against Swanson in her official capacity. As to Dahir's claims against Swanson in her individual capacity, Swanson remains a defendant.

Kathryn Iverson Landrum, Esq. on behalf of Defendant Lori Swanson, (ECF No. 26). These motions were referred for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.2. (ECF No. 25). The Court recommends Defendants' motion be granted, Plaintiff's motion be deemed moot, and this matter be dismissed with prejudice for the reasons stated herein.

## I. BACKGROUND

Dahir filed his complaint on October 22, 2018. (Compl., ECF No. 1). Dahir alleges Defendants wrongfully caused him to appear as a convicted felon because his name was used in an earlier case against a business he owned. In 2015, the Minnesota Attorney General's Office ("MN-AGO") brought Medicare fraud charges against Twin Cities Care Services ("TCCS"), a business Dahir owned. (Compl., at 8; *see also* Landrum Aff. ECF No. 22, at Ex. D). Dahir claims the state's initial complaint wrongfully listed both TCCS and Dahir as Defendants. (Compl., at 8). Dahir asserts his name should not have been included in either the caption or the body of the complaint because Dahir "was not a defendant nor a party and could not represent the defendant, TCCS, a limited liability company." (Compl., at 8 (internal quotation marks omitted)).

Dahir states the complaint was then amended twice. (Compl., at 8). Dahir claims the state's first amended complaint still listed Dahir in the caption and body of the complaint. (Compl., at 8). Dahir asserts Defendant Kieley prepared and signed the first amended complaint and Defendant Haldeman authorized and approved Defendant Kieley's affidavit that was filed with the complaint. (Compl., at 8).

Dahir claims Defendant Kujawa replaced Defendant Haldeman and authorized the second amended complaint. (Compl., at 8). Dahir states the second amended complaint removed Dahir's name from the caption but still listed his name and actions in the body of the complaint. (Compl., at 8). Dahir alleges Defendant Kujawa had "notice to correct any mistakes in which Dahir was referred [to] as a defendant when, on September 22, 2016, the attorney representing TCCS filed a poorly prepared and argued motion to strike surplusage including Dahir's name and date of birth." (Compl., at 8).

Dahir asserts TCCS was convicted of four counts of medical theft, and following that judgment, Dahir found himself listed as having four "very serious criminal felony convictions" in the Minnesota Court Information System ("MNCIS"). (Compl., at 9). Dahir claims he filed a motion with the district court asking to be removed from MNCIS. (Compl., at 9). Dahir states Defendant Kohnstamm "objected to the corrections vigorously" and the district court denied Dahir's motion and his motion to reconsider. (Compl., at 9). Dahir alleges Defendant Florey jointly represented the state with Defendant Kohnstamm. (Compl., at 10). Dahir asserts he then sought review with the Minnesota Court of Appeals, which held that Dahir's name should be removed from MNCIS but that his name was properly used in the body of the complaint. (Compl., at 9; *see also* Landrum Aff. ECF No. 22, at Ex. M). Dahir states he then contacted Defendant Swanson "outlining the harm and injuries caused by her office and employees," to which she did not respond. (Compl., at 10–11).

Dahir asserts Defendant Swanson "had a responsibility to supervise attorneys and other employees working under her" and "was aware and/or should have known that if

3

abuses by her subordinates were not checked, it would be fatal and change lives forever . . . ." (Compl., at 17). Dahir also claims Defendant "Poupore was, at least, managing attorney for Kohnstamm and probably Florey, [and] she knew and/or should have known the acts and/or omissions of her subordinates." (Compl., at 18).

Dahir listed thirteen counts of opportunities "for the state to correct any showing that Dahir was a party and a defendant." (Compl., at 12). The Court does not find it necessary to detail each count as all the counts state one claim: Defendants wrongfully referred to and named Dahir in the criminal prosecution of TCCS. (Compl., at 11–18). Dahir also claims the MN-AGO frequently "targets[] in particular the Somali community in Minnesota in the name of law enforcement." (Compl., at 19).

As a result of Defendants' conduct, Dahir claims damages of $53,155,000 for the "loss of opportunities and income, mental distress, pain, anguish, grief, anxiety, humiliation, indignation, outrage, wounded pride, damaged self-confidence or self-esteem, loss of faith in friends or colleagues etc." (Compl., at 25).

## II.   LEGAL STANDARD

In assessing a *pro se* complaint, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d

912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

"Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'" *Barclay Square Prop. v. Midwest Fed. Sav. and Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)). Federal courts must dismiss a claim if it lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(h)(3), 12(b)(1). When considering a facial attack on jurisdiction in a Rule 12(b)(1) motion, the court "merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (quotation omitted). Under such an analysis, the court restricts itself to the pleadings and the non-moving party is afforded the same protections as those provided by a Rule 12(b)(6) motion. *Id.*

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten*

5

& *Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a complaint need not be detailed to be sufficient, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action." (quotations and citation omitted)). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted)).

### III.  ANALYSIS

Dahir asks the Court to award him damages of $53,155,000 for the alleged unlawful conduct of including Dahir's name in the complaint against TCCS. Dahir's claims fail for multiple reasons. His claims are barred under Rule 12(b)(1) for a lack of jurisdiction on multiple grounds. First, the Court lacks jurisdiction over Dahir's claims under the doctrine of *Rooker-Feldman*. Second, the Court has no jurisdiction over Dahir's claims against Defendants Swanson and Poupore under § 1983. Third, the Court has no jurisdiction over Dahir's claims against Defendants in their official capacities under the Eleventh Amendment. Even if Dahir's claims survived Defendants' challenges pursuant to Rule 12(b)(1), the Court also concludes that Dahir's suit must be dismissed under Rule 12(b)(6)

for failure to state a claim; Dahir fails to state a procedural or substantive due process claim. Rule 12(b)(6) also demands Dahir's claims against Defendants be dismissed under the doctrine of prosecutorial immunity.

### A. Dismissal Under Rule 12(b)(1): No Jurisdiction Over All Claims Under *Rooker-Feldman*

The *Rooker-Feldman* doctrine stands for the general principle that, excepting habeas corpus petitions, lower federal courts lack subject matter jurisdiction to review state court decisions. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923). "Such jurisdiction is vested only in the United States Supreme Court." *Prince v. Arkansas Bd. of Exam'rs in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004). *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, 544 U.S. 280, 284 (2005). The *Rooker–Feldman* doctrine not only prohibits "straightforward appeals" of state judgments in federal court, but also federal review of matters "inextricably intertwined" with state court rulings. *See Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003). "A federal claim is inextricably intertwined with a state court judgment when the relief requested in the federal action would effectively reverse the state court decision or void its ruling. *Canal Capital Corp. v. Valley Pride Pack*, Inc., 169 F.3d 508, 512 (8th Cir. 1999) (internal quotations omitted). In short, the *Rooker–Feldman* doctrine applies in those

situations where a claimant has sued and lost in state court and then commences an action in federal court seeking relief for an injury caused by the state court's decision.

Dahir's request for the Court to order compensation for the alleged wrong of including his name in a state-court case falls squarely within *Rooker-Feldman*. The case against TCCS was litigated in state court. Dahir also initiated separate litigation on the use of his name in the case against TCCS in state court. The Minnesota Court of Appeals held Dahir should not be identified as a criminal defendant but that Dahir was not entitled "to an order removing any association of TCCS's conviction with Dahir's name" because Dahir did in fact own TCCS. (Landrum Aff. ECF No. 22, at Ex. M (internal quotations and brackets omitted)). Dahir claims injury in the instant case arising from these state court proceedings; Dahir claims injury from his name appearing in MNCIS and the use of his name in the caption and body of the complaint against TCCS. The state court judgments at issue, both against TCCS and Dahir's separate litigation on the use of his name in the TCCS case, were rendered before Dahir commenced his federal complaint. He now invites the Court to reject the state court judgments by asking the Court to order compensation for his injuries. Because the genesis of Dahir's claims against the Defendants arise out of state court decisions, the Court is precluded from reviewing these claims under *Rooker-Feldman*.

### B. Dismissal Under Rule 12(b)(1): No Jurisdiction Over Claims Against Defendants Swanson and Poupore Under § 1983

State employees cannot be held vicariously liable under 42 U.S.C. § 1983 for constitutional violations allegedly committed by their subordinates, because the doctrine

of respondeat superior is not applicable in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). Dahir has not described any actions that Defendant Swanson or Defendant Poupore took or failed to take that allegedly violated his constitutional rights. Instead, Dahir is seeking to hold Defendants Swanson and Poupore vicariously liable for constitutional violations committed by their subordinates. Indeed, Dahir states Defendant "Swanson had a responsibility to supervise attorneys and other employees working under her" and states that Defendant Poupore, as a managing attorney, "knew and/or should have known the acts and/or omissions of her subordinates." (Compl., at 17, 18). The Court recommends dismissing claims against Defendants Swanson and Poupore because Dahir does not allege their personal involvement, as required by a § 1983 claim.

### C. Dismissal Under Rule 12(b)(1): No Jurisdiction Over Official Capacity Claims Under Eleventh Amendment

The Eleventh Amendment bars suit against a state, absent a state's consent to filing of such a suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). This immunity applies to claims against state agencies, as well as officials sued in their official capacities. *See, e.g.*, *Will v. Mich. Dep't of State* Police, 491 U.S. 58, 71 (1989). A federal court lacks jurisdiction over claims barred by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). As attorneys or employees for the MN-AGO, defendants are all Minnesota state officials. Dahir's suit against them arise from their actions in their official capacity for the State of Minnesota—using Dahir's name in the criminal prosecution of TCCS. The Court is precluded from reviewing any official

capacity claims Dahir has against defendants because the claims arise from their actions in their official capacity as attorneys for the State of Minnesota.

### D. Dismissal Under Rule 12(b)(6): No Violation of Due Process

Defendants seeking dismissal of § 1983 claims under Rule 12(b)(6) based on the qualified immunity doctrine "must show that they are entitled to qualified immunity on the face of the complaint." *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (citation and internal quotation marks omitted). "[U]nder the doctrine of qualified immunity a court must dismiss a complaint against a government official in [her or] his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether defendants have qualified immunity, the Court asks: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

Dahir's thirteen separate counts contain only one claim: a violation of his due process rights for including his name in the criminal complaint against TCCS. Dahir does not specify whether this violation was statutory or constitutional; the Court addresses both out of an abundance of caution. Dahir does not point to, and the Court cannot find, any state or federal statute penalizing the inclusion an individual's name in the criminal complaint or caption of a business the individual owns. Similarly, as explained below, the

10

Court does not find a constitutional violation of Dahir's procedural or substantive due process rights.

### 1. Procedural Due Process

To establish a procedural due process violation, "a plaintiff, first must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant[s] deprived him of such an interest without due process of the law." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817–18 (8th Cir. 2011). If there is a protected interest at stake, the Court should "then consider what process is due by balancing the specific interest that was affected, the likelihood that the [MN-AGO's] procedures would result in erroneous deprivation and the [MN-AGO's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

Dahir has one complaint: a violation of his due process rights by including his name in the criminal complaint against TCCS. The Court does not find that this constitutes a protected liberty or property interest. *See Green v. DeCamp*, 612 F.2d 368, 370 (8th Cir. 1980) ("Although the imputation of a crime may be defamation per se, the stigma to one's reputation [i]s not a property or liberty interest protected by the Fourteenth Amendment." (citing *Paul v. Davis*, 424 U.S. 693, (1976))). Dahir's claim that this alleged violation resulted in over fifty-three million dollars of damages from reputational harm, including a loss of business and emotional harm, does not change this conclusion. *See id.* ("[A]llegations of a loss of business as a result of the damage to his reputation, without more, does not change this conclusion."). Because the Court does not find a protected

11

liberty interest at stake, the Court does not go on to consider what process is due. To the extent Dahir brings a procedural due process claim, the Court recommends dismissal.

### 2. Substantive Due Process

"To establish a substantive due process violation, the [Plaintiff] must demonstrate that a fundamental right was violated and that [the Defendants'] conduct shocks the conscience." *Folkers v. City of Waverly, Ia.*, 707 F.3d 975, 980 (8th Cir. 2013). "Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise. *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012). The question is "whether the extent or nature of the restraint . . . is such as to violate due process." *Youngberg*, 457 U.S. at 320. To determine the answer, the Court must balance Dahir's "liberty interest[] against the relevant state interests." *Id.* at 321.

The Court does not find these facts conscious-shocking. The MN-AGO removed Dahir's name from the case caption in the first amended complaint. Dahir's name needed to be included in the body of the criminal complaint because the MN-AGO was required to prove that criminal acts were "authorized, tolerated, or ratified by corporate management" of TCCS and Dahir was the sole owner of TCCS. *See State v. Christy Pontiac-GMC, Inc.*, 354 N.W.2d 17, 20 (Minn. 1984). To the extent Dahir brings a substantive due process claim, the Court recommends dismissal.

### E. Dismissal Under Rule 12(b)(6): No Jurisdiction Over all Claims Because of Prosecutorial Immunity

State prosecutors are protected by absolute immunity against § 1983 claims arising from "the initiation and pursuit of criminal prosecution." *Buckley v. Fitzsimmons*, 509 U.S.

12

259, 269 (1993). "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)). When absolute immunity bars a suit, "dismissal under Rule 12(b)(6) is appropriate." *Id.*

The Court finds Dahir's § 1983 claims against these Defendants fail because they are protected by absolute immunity. Dahir claims Defendants Haldeman, Kujawa, Kohnstamm, and Florey acted unlawfully in allowing Dahir's name to appear in the case caption and in the body of the complaint against TCCS. Dahir states these defendants acted knowingly when they failed to "correct any showing that Dahir was a party, a defendant, and/or a convicted felon" on thirteen different instances during the litigation against TCCS and Dahir's later litigation to remove his name from appearing on MNCIS (Compl., at 17; *see also* Compl., at 11–18). The decision to file the complaint as well as the writing and oral advocacy at the trial and appellate level fall under the "initiation and pursuit of criminal prosecution." *Buckley*, 509 U.S. at 269. Dahir's later motion and appeal to stop his name from appearing on MNCIS arose from the initial criminal prosecution of TCCS and thus does not change the analysis. Similarly, Dahir's claims that these Defendants acted knowingly or with malice because Dahir was Somali does not change the Court's analysis. *See Sample*, 836 F.3d at 916 ("[A]llegations of . . . improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity."). Because Dahir's § 1983 claim against these defendants is based on their actions prosecuting a criminal case against TCCS, the Court recommends dismissal.

Dahir also claims Defendant Kieley, an investigator, was responsible for the first amended complaint and affidavit filed establishing probable cause. (Compl., at 8). Prosecutorial immunity "is equally available to investigators for the state prosecutor for actions in connection with a criminal prosecution." *Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980) (internal citations omitted). Defendant Kieley's work investigating TCCS, her affidavit detailing any work or opinions she formed, and her work in relation to the complaint against TCCS were all in the "initiation and pursuit of criminal prosecution" of TCCS. *Buckley*, 509 U.S. at 269. Because Defendant Kieley is entitled to absolute prosecutorial immunity for her role in the drafting and filing of the criminal complaint against TCCS, the Court recommends dismissal.[2]

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** as follows:

1. Defendants' Motion to Dismiss, (ECF No. 18) be **GRANTED**;
2. Dahir's Motion Objecting in Part and Conceding in Part to the Letter Signed by Kathryn Iverson Landrum, Esq. on Behalf of Defendant Lori Swanson, (ECF No. 26) is **MOOT**; and
3. Dahir's Complaint (ECF No. 1), be **DISMISSED WITH PREJUDICE.**

---

[2] The State also argues that Dahir's claims against Investigator Kieley should be dismissed because as an investigator, she would have no authority to assert criminal charges against Dahir and thus could not be directly responsible for the injuries Dahir claims from his name appearing in the case against TCCS. Dahir has detailed specific allegations against Defendant Kieley in his § 1983 claim. Dahir claims Defendant Kieley is responsible for signing the affidavit and preparing the complaint that wrongfully listed Dahir as a Defendant. Because Dahir is a *pro se* party, the Court liberally construes his pleadings when analyzing his legal claims.

Date: July 23, 2019                     *s/ Steven E. Rau*
                                        Steven E. Rau
                                        United States Magistrate Judge
                                        District of Minnesota

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).